941 F.2d 1292
 138 L.R.R.M. (BNA) 2219, 60 USLW 2223,
120 Lab.Cas. P 10,951
 UNITED STATES of America, Plaintiff-Appellee,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF AMERICA, AFL-CIO; the
Commission of La Cosa Nostra; Anthony Salerno, also known
as Fat Tony; Matthew Ianniello, also known as Matty the
Horse; Anthony Provenzano, also known as Tony Pro; Nunzio
Provenzano, also known as Nunzi Pro; Anthony Corallo, also
known as Tony Ducks; Salvatore Santoro, also known as Tom
Mix; Christopher Furnari, Sr., also known as Christie Tick;
Frank Manzo; Carmine Persico, also known as Junior, also
known as The Snake; Gennaro Langella, also known as Gerry
Lang; Philip Rastelli, also known as Rusty; Nicholas
Marangello, also known as Nicky Glasses; Joseph Massino,
also known as Joey Messina; Anthony Ficarotta, also known
as Figgy; Eugene Boffa, Sr.; Francis Sheeran; Milton
Rockman, also known as Maishe; John Tronolone, also known
as Peanuts; Joseph John Aiuppa, also known as Joey O'Brien,
also known as Joe Doves, also known as Joey Aiuppa; John
Phillip Cerone, also known as Jackie the Lackie, also known
as Jackie Cerone; Joseph Lombardo, also known as Joey the
Clown; Angelo LaPietra, also known as The Nutcracker;
Frank Balistrieri, also known as Mr. B; Carl Angelo DeLuna,
also known as Toughy; Carl Civella, also known as Corky;
Anthony Thomas Civella, also known as Tony Ripe; General
Executive Board, International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of America; Jackie
Presser, General President; Weldon Mathis, General
Secretary-Treasurer; Joseph Trerotola, also known as Joe T;
Robert Holmes, Sr., Second Vice President; William J.
McCarthy, Third Vice President; Joseph W. Morgan, Fourth
Vice President; Edward M. Larson, Fifth Vice President;
Arnold Weinmeister, Sixth Vice President; John H.
Cleveland, Seventh Vice President; Maurice R. Schurr,
Eighth Vice President; Donald Peters, Ninth Vice President;
Walter J. Shea, Tenth Vice President; Harold Friedman,
Eleventh Vice President; Jack D. Cox, Twelfth Vice
President; Don L. West, Thirteenth Vice President; Michael
J. Riley, Fourteenth Vice President; Theodore Cozza,
Fifteenth Vice President; Daniel Ligurotis, Sixteenth Vice
President; Salvatore Provenzano, also known as Sammy Pro,
Former Vice President, Defendants,
Dominic Senese and Joseph Talerico, Respondents-Appellants,
Charles M. Carberry, Investigations Officer-Appellee.
 No. 1642, Docket 91-6052.
 United States Court of Appeals,
Second Circuit.
 Argued June 7, 1991.
Decided Aug. 6, 1991.
 
 Patrick J. Calihan, Chicago, Ill. (Edward J. Calihan, Jr., John Toomey, of counsel), for respondents-appellants.
 Peter C. Sprung, New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Edward T. Ferguson, III, of counsel), for plaintiff-appellee U.S.
 Charles M. Carberry, New York City, Investigations Officer-appellee, pro se.
 Before OAKES, Chief Judge, and PRATT and ALTIMARI, Circuit Judges.
 OAKES, Chief Judge:
 
 
 1
 Dominic Senese and Joseph Talerico, former members of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO ("IBT") and former officials of IBT-affiliated local unions, appeal from orders of the United States District Court for the Southern District of New York, David N. Edelstein, Judge, upholding internal union disciplinary sanctions imposed on them by reason of, among other things, their association with organized crime. For the reasons set forth below, we affirm.
 
 BACKGROUND
 
 2
 On March 14, 1989, Judge Edelstein entered a consent decree (the "Decree") settling civil racketeering charges brought by the Government against the IBT and members of the IBT General Executive Board. The Decree has already engendered a staggering amount of litigation, and, as a result, we have had many occasions to discuss in detail the nature of the underlying racketeering charges and the contents of the Decree itself. See, e.g., United States v. International Broth. of Teamsters, 931 F.2d 177 (2d Cir.1991). In our discussion here, therefore, we provide only a brief background of the facts giving rise to this particular appeal.
 
 
 3
 A central feature of the Decree was the establishment of three Court-appointed offices which were designed to oversee the IBT's internal affairs. First, the Decree provided for an Independent Administrator (the "IA"), to oversee the Decree's remedial provisions. Second, it provided for an Investigations Officer, to bring charges against corrupt IBT members. Finally, it established an Elections Officer, to oversee the electoral process leading up to and including the election for International Officers at the 1991 IBT Convention.
 
 
 4
 In separate charges filed on November 30, 1989, the Investigations Officer charged Senese and Talerico with violating the IBT Constitution "by conducting [themselves] in a manner to bring reproach upon the [IBT]."[1] At that time, Senese was the President of IBT Local 703 in Chicago, and Talerico was a business agent for Chicago IBT Local 727. The basis for the allegations against Senese was his association with La Cosa Nostra and his knowing association with La Cosa Nostra members Joseph Aiuppa and John Cerone. The charges against Talerico were premised upon his unlawful refusal to answer questions before a federal grand jury investigating the skimming of money from a Las Vegas casino, and his knowing association with La Cosa Nostra members Joseph Aiuppa and Philip Ponto.[2]
 
 
 5
 The IA held a hearing on the charges against Senese and Talerico on March 22 and 23, 1990. In support of the charges, the Investigations Officer relied principally on the oral testimony and written declaration of Peter J. Wacks, a Special Agent of the Federal Bureau of Investigation ("FBI"), as well as the declaration of FBI Special Agent Charlie J. Parsons. The Wacks and Parsons declarations summarized voluminous evidence concerning Senese and Talerico and their involvement with the Chicago La Cosa Nostra family, and contained extensive supporting documentation.
 
 
 6
 On July 12, 1990, after reviewing the hearing record and post-hearing memoranda submitted by counsel, the IA issued a 42-page opinion concluding that there was just cause to sustain each of the charges against Senese and Talerico. As a sanction, the IA permanently removed Senese and Talerico from all of their IBT positions, expelled them from the IBT, and prohibited them from drawing any money from the IBT or its affiliates.[3]
 
 
 7
 On July 12, 1990, the IA submitted his opinion to the district court, seeking review of his decision on the disciplinary charges against Senese and Talerico. On August 27, 1990, the district court issued an opinion and order upholding the IA's permanent bar of Senese and Talerico, but remanding the case for the IA to determine the proper treatment of Senese's health and welfare benefits.[4] See 745 F.Supp. 908. On remand, the IA issued a supplemental opinion terminating Senese's IBT-related employee benefits. On December 29, 1990, the district court affirmed this supplemental opinion in all respects. See 753 F.Supp. 1181.
 
 
 8
 Senese and Talerico now appeal from the district court's August 27 and December 29, 1990 orders.
 
 DISCUSSION
 
 9
 Senese and Talerico argue that the IA's imposition of sanctions violated their First, Fifth, and Eighth Amendment rights under the United States Constitution. In addition, Senese argues that the termination of his IBT-related benefits violated both the terms of the Decree and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. (1988). We reject Senese and Talerico's constitutional challenges on two grounds. First, we believe that the IA's imposition of sanctions did not constitute "state action," and that, as a result, the constitutional provisions that Senese and Talerico cite do not apply. Second, even assuming that the IA's conduct did constitute state action, we believe that his decision comported with all the constitutional provisions that might conceivably apply. Accordingly, because we also believe that the IA's termination of Senese's employee benefit plans was proper, we affirm.
 
 A. Constitutional Claims
 1. State Action
 
 10
 Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes "state action." See, e.g., Blum v. Yaretsky, 457 U.S. 991, 1002, 102 S.Ct. 2777, 2784-85, 73 L.Ed.2d 534 (1982). To qualify as state action, the conduct in question "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and "the party charged with the [conduct] must be a person who may fairly be said to be a state actor." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). The IA's imposition of sanctions on Senese and Talerico meets neither of these criteria.
 
 
 11
 First, in sanctioning Senese and Talerico, the IA acted pursuant to the IBT Constitution--a private agreement--and not pursuant to a "right or privilege created by the State." Id. Thus, the charges he brought were premised on violations of Article II, section 2(a) of the IBT Constitution, not on violations of any federal or state law. Similarly, the IA's authority to impose the sanctions stemmed from the post-Decree amendments to the IBT Constitution, which established the IA and empowered him to oversee the IBT's internal disciplinary affairs, see United States v. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers, AFL-CIO, 905 F.2d 610, 622 (2d Cir.1990), and not from any provision of federal or state law. Thus, Senese and Talerico fail to satisfy the first element of the definition of state action set forth above.[5]
 
 
 12
 Senese and Talerico are also unable to establish that the IA "may fairly be said to be a state actor." Lugar, 457 U.S. at 937, 102 S.Ct. at 2754. The IA has offices that are provided by the IBT, and the IBT pays his salary. Thus, the position is under the control of the IBT, and remains a private, not a governmental, role.
 
 
 13
 In attempting to convince us that the IA is a governmental actor, Senese and Talerico emphasize that the IA was established to settle a lawsuit brought by the Government, and that the district court appointed the IA and continues to oversee his affairs. This argument misses the point. The question is not whether the decision to establish the IA was state action, but rather whether the IA's decision to sanction Senese and Talerico may be "fairly attributable" to the Government. Id.; see also Powe v. Miles, 407 F.2d 73, 81 (2d Cir.1968) (Friendly, J.) ("[T]he state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury.") (emphasis added). Because the IA's decision to sanction Senese and Talerico was guided only by the IBT Constitution, and not by any state or federal authority, Senese and Talerico's characterization of the IA's decision as state action must fail.
 
 
 14
 Our conclusion that the IA's imposition of sanctions did not constitute state action comports with the Supreme Court's decisions in Blum v. Yaretsky, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), and Rendell-Baker v. Kohn, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). In Yaretsky, for example, the Court concluded that a private nursing home's decision to transfer and discharge patients to lower cost facilities was not state action, despite the fact that State regulations "encouraged" the homes to transfer patients to "lower levels of care," because the ultimate decision to transfer was based on "medical judgments made by private parties according to professional standards that are not established by the State." 457 U.S. at 1008 & n. 19, 102 S.Ct. at 2788 & n. 19. Likewise, in Rendell-Baker, the Court found that a private school's decision to fire one of its teachers was not state action, even though the school was extensively financed and regulated by the State, because the ultimate decision to discharge the teacher was not "compelled or even influenced by any state regulation." Rendell-Baker, 457 U.S. at 841, 102 S.Ct. at 2771. These cases, we believe, indicate that governmental oversight of a private institution does not convert the institution's decisions into those of the State, as long as the decision in question is based on the institution's independent assessment of its own policies and needs. See Albert v. Carovano, 851 F.2d 561, 570-71 (2d Cir.1988) (en banc) (holding that private university's decision to discipline students was not attributable to the State, even though State required university to establish disciplinary policy, where decision to discipline particular students was based on university's independent assessment of its own needs). Thus, because the IA's decision to sanction Senese and Talerico was based on the policies and procedures embodied in the IBT's own Constitution, and not on state or federal law, the decision was not state action, and Senese and Talerico's constitutional claims must fail.
 
 2. Substantive Constitutional Rights
 
 15
 Even if the IA's conduct did constitute state action, our result today would be the same, as Senese and Talerico's constitutional claims are entirely without merit.
 
 
 16
 a. First Amendment
 
 
 17
 Senese and Talerico argue that the disciplinary sanctions imposed on them violated their First Amendment right to freedom of association, because the sanctions were based in part on their voluntary associations with members of La Cosa Nostra. However, it is well established that an individual's right to freedom of association may be curtailed to further significant governmental interests. See, e.g., United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers, AFL-CIO, 413 U.S. 548, 567, 93 S.Ct. 2880, 2891, 37 L.Ed.2d 796 (1973) (upholding ban on political activity by union employees). Because the public has a compelling interest in eliminating the " 'public evils' of 'crime, corruption, and racketeering' " in union activity, Brown v. Hotel & Restaurant Employees and Bartenders Int'l Union Local 54, 468 U.S. 491, 508, 104 S.Ct. 3179, 3189, 82 L.Ed.2d 373 (1984) (citation omitted), the IA was fully justified in sanctioning Senese and Talerico for their knowing association with organized crime here. Accord Hotel & Restaurant Employees Local 54 v. Read, 597 F.Supp. 1431, 1446-51 (D.N.J.1984) (rejecting claim that New Jersey Casino Control Commission's order requiring removal of union officials based upon their organized crime associations violated First Amendment right to freedom of association), aff'd mem., 772 F.2d 893 (3d Cir.1985).
 
 
 18
 b. Fifth Amendment
 
 
 19
 Senese and Talerico also claim that the IA's imposition of sanctions violated their Fifth Amendment right to due process. First, they claim that they were denied due process because they were disciplined under procedures contained in a consent decree to which they were not parties. Our prior opinion in United States v. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers, AFL-CIO, 931 F.2d 177 (2d Cir.1991), however, clearly establishes that the IBT leadership adequately represented the interests of the IBT membership in negotiating and adopting the Decree. See id. at 184-87. As such, the fact that Senese and Talerico were not signatories to the Decree is no bar to binding them to the Decree's terms.
 
 
 20
 Senese and Talerico also claim that they were denied due process because, until the Decree was adopted, it was not clear that association with members of organized crime was prohibited. This argument is meritless. As Judge Edelstein noted, the Decree did not create new standards of conduct for IBT members, but simply made explicit the longstanding goal of the IBT to be free of corruption. See 745 F.Supp. at 913. As such, the IA's sanctioning of Senese and Talerico for their pre-Decree associations with organized crime did not violate due process.
 
 
 21
 In addition, Senese and Talerico contend that they were denied their right to confront and cross-examine the witnesses against them. This claim rests principally on the fact that much of the evidence introduced at their hearing was in the form of hearsay. However, procedural due process does not require rigid adherence to technical evidentiary rules in administrative hearings, as long as the evidence introduced is reliable. See, e.g., Richardson v. Perales, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427-28, 28 L.Ed.2d 842 (1971) (upholding introduction in administrative hearing of hearsay medical reports, based on reports' reliability). Thus, because Senese and Talerico do not dispute that the admitted evidence was reliable, their reliance on the Due Process Clause must fail.
 
 
 22
 Finally, Senese and Talerico claim that the offense for which they were sanctioned--bringing "reproach" upon the union--was unconstitutionally vague. However, even if a regulation may be vague in certain hypothetical applications, it may still constitutionally be applied to conduct that unquestionably falls within its terms. See Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."); see also Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 n. 7, 102 S.Ct. 1186, 1191 n. 7, 71 L.Ed.2d 362 (1982). Thus, because it should have been clear to Senese and Talerico that associating with known members of organized crime would bring reproach upon the IBT, sanctioning them for these activities was not constitutionally infirm.
 
 
 23
 c. Eighth Amendment
 
 
 24
 Senese and Talerico also claim that the sanctions imposed on them constitute "cruel and unusual punishment" in violation of the Eighth Amendment. This claim is entirely without merit. The Eighth Amendment applies only to punitive sanctions, see Browning-Ferris Indus. v. Kelco Disposal, Inc., 492 U.S. 257, 262, 109 S.Ct. 2909, 2913, 106 L.Ed.2d 219 (1989) (noting that the Eighth Amendment has been understood "to apply primarily, and perhaps exclusively, to criminal prosecutions and punishments"), not to the sort of remedial sanctions imposed on Senese and Talerico here. In any event, given that neither death nor incarceration was imposed, Senese and Talerico's reliance on the Eighth Amendment is unfounded.
 
 B. Senese's Benefits
 
 25
 Senese also argues that the IA's decision to prevent him from taking a lucrative severance package from IBT Local 703, and to prevent the Local from making any further contributions on Senese's behalf to any IBT-affiliated benefit plan, violated both the Decree and ERISA. We disagree.
 
 
 26
 Senese's claim that the termination of his Union and health and welfare benefits violated the terms of the Decree is groundless. Cutting off Senese's benefits served the Decree's objective of severing ties between the IBT and organized crime. As for Paragraph 20, which Senese contends precludes the IA from terminating his benefits, that provision, by its terms, applies only to the Government, and not to court-appointed officers such as the IA. Paragraph 20 also clearly states that it applies only to the union defendants in the underlying civil RICO action, and not to individuals such as Senese.
 
 
 27
 Senese's argument that the termination of his benefits violated ERISA is similarly unfounded. The anti-alienation provision of ERISA, on which Senese relies, applies only to ERISA pension benefits, not to ERISA welfare benefits. See Mackey v. Lanier Collections Agency & Serv. Inc., 486 U.S. 825, 836, 108 S.Ct. 2182, 2188-89, 100 L.Ed.2d 836 (1988). Because the district court correctly characterized the benefits here as health and welfare benefits--a characterization Senese does not challenge--ERISA does not apply.
 
 
 28
 Accordingly, the orders of the district court are affirmed.
 
 
 
 [1]
 Article II, section 2(a) of the IBT Constitution requires every IBT member to affirm that he will, inter alia, "conduct himself ... at all times in such a manner as not to bring reproach upon the Union." Article XIX, section 6(b)(2) of the IBT Constitution provides that "[v]iolation of oath of office or of the oath of loyalty to the Local Union and the International Union" is a basis for union disciplinary charges
 
 
 [2]
 The Investigations Officer also charged Chicago IBT Local 786 employee James Vincent Cozzo with conducting himself in a manner to bring reproach upon the IBT. Cozzo did not appear at the hearing, however, and the Investigations Officer therefore proceeded against him in his absence
 
 
 [3]
 The Independent Administrator also concluded that there was just cause to sustain the charge against Cozzo and imposed the same sanction on him. Cozzo did not appeal to the district court, however, and his case is therefore not before us
 
 
 [4]
 Talerico represented to the Independent Administrator that he had no continuing IBT-related employee benefit coverage
 
 
 [5]
 Edmondson v. Leesville Concrete Co., Inc., --- U.S. ----, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), where the Court held that a private party exercising peremptory challenges in a civil case to exclude jurors on account of race was a state actor because of legislative establishment of, and judicial supervision over, the jury system and juror selection process, id. 111 S.Ct. at 2084-85, is inapposite. There the Court was dealing with private actors performing governmental functions while here we have the IA, a quasi governmental actor, performing private functions under the IBT constitution