**UNITED STATES of America, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.**

**No. 88 CIV. 4486 (DNE).**

United States District Court,
S.D. New York.

Oct. 29, 1991.

Otto Obermaier, U.S. Atty. for the Southern District of New York (Edward T. Ferguson, III, Asst. U.S. Atty., of counsel), for U.S.

Frederick B. Lacey, the Independent Adm'r of the Intern. Broth. of Teamsters, (Stuart Alderoty, of counsel).

Elliot, Bray & Riley, Philadelphia, Pa. (Robert J. Bray, Jr. and Henry F. Siedzikowski, of counsel), for Star Market.

## OPINION AND ORDER

EDELSTEIN, District Judge:

This decision arises from the implementation of the rules for the International Brotherhood of Teamsters ("IBT") International Union Delegate and Officer Election (the "Election Rules"), promulgated by the Election Officer and approved as modified by this Court and the Court of Appeals. July 10, 1991 Opinion & Order, 742 F.Supp. 94 (S.D.N.Y.1990), aff'd, 931 F.2d 177 (2d Cir.1991). The Government brought an Order to Show Cause why this Court should not: (1) affirm the September 18, 1991 decision of the Independent Administrator in Election Appeal 91—Elec.App.–187, which affirmed the September 9, 1991 decision of the Election Officer in Election Office Case No. P–760–LU25–ENG; (2) enter an order

directing Star Market, Inc. ("Star Market") to comply fully, within twenty-four hours, with the September 18, 1991 decision of the Independent Administrator in Election Appeal 91—Elec.App.–187; (3) in the event that Star Market fails to comply with this Court's order, adjudge Star Market in civil contempt and impose coercive sanctions, including substantial daily fines of at least $10,000 per day until Star Market complies as directed; and (4) award the Government, the Election Officer and the Independent Administrator such other relief, including attorney's fees, as this Court deems appropriate.

## I. BACKGROUND

The Election Officer was appointed by the Court pursuant to its March 14, 1989 Order (the "Consent Decree"), which was agreed to by the plaintiff United States of America (the "Government") and the defendant IBT in settlement of the bulk of this civil racketeering action. The Election Officer is empowered to supervise the implementation of the Consent Decree's electoral provisions, culminating in the first-ever direct rank and file election of IBT International officers. *See* Consent Decree, ¶ 12(D); October 18, 1989 Opinion & Order, 723 F.Supp. 203, 206–07 (S.D.N.Y.), *appeal dismissed*, No. 89–6252 (2d Cir. Dec. 13, 1989), *cert. denied*, — U.S. ——, 110 S.Ct. 2618, 110 L.Ed.2d 639 (1990). Pursuant to his supervisory authority, the Election Officer promulgated the Election Rules, which were approved as modified by this Court and the Court of Appeals. July 10, 1991 Opinion & Order, 742 F.Supp. 94 (S.D.N.Y.1990), *aff'd*, 931 F.2d 177 (2d Cir. 1991). The Election Rules are the linchpin of the Consent Decree's efforts to cleanse the IBT of La Cosa Nostra's corrupt influences. October 18, 1989 Opinion & Order, 723 F.Supp. at 206–07; October 25, 1991

Order, *slip opinion* at 1 (S.D.N.Y.1991). The Election Rules protect, *inter alia*, the rights of IBT members to participate in union election campaign activities, *see* Art. VIII, § 10(a), and enable the Election Officer to respond to violations of the Election Rules, or any other conduct preventing a fair, honest, and open election, with a wide range of remedial measures. *See* Art. XI, § 2.

This matter involves the election protest of Neal J. Henderson, who is a member of IBT Local 25 in Boston, Massachusetts.[1] The principle officer of Local 25 is IBT General President William J. McCarthy. Before his discharge, Henderson had been employed by Star Market since 1977 as a warehouseman in the perishables department of one of its Boston-area facilities. Henderson has been a union steward at Star Market since 1986.

Last spring Henderson was elected as a delegate to the IBT International Union Convention on a slate supporting the candidacy of Ron Carey for IBT General President. Henderson and his slate were opposed by an incumbent-officer slate headed by McCarthy, which supported the candidacy of R.V. Durham for IBT General President.

After winning election as a Local 25 delegate to the International Union Convention, Henderson continued to engage openly, and with Star Market's knowledge, in pro-Carey campaign activities at his place of employment. Star Market's supervisors made disparaging remarks to Henderson about his candidacy for delegate and his other pro-Carey campaign activities.

On May 2, 1991 Henderson and ten other employees accepted a pre-shift overtime assignment that was to begin at 7:00 p.m. and end at 9:25 p.m. Henderson's regular shift was to begin at 10:00 p.m. Star Mar-

---

**1.** The following account is based on the findings of the Independent Administrator. As set forth more fully below, the findings of the Independent Administrator "are entitled to great deference." *United States v. International Brotherhood of Teamsters*, 905 F.2d 610, 616 (2d Cir. 1990), *aff'g*, March 13, 1990 Opinion & Order, 743 F.Supp. 155 (S.D.N.Y.1990). This Court will overturn findings of the Independent Adminis-

trator when it determines that they are, on the basis of all the evidence, arbitrary and capricious. *Id.* at 622; *see, e.g.,* October 24, 1991 Opinion & Order, *slip opinion*, at 4–5 (S.D.N.Y.1991); May 13, 1991 Memorandum & Order, 764 F.Supp. 817, 820–21 (S.D.N.Y.1991); August 27, 1990 Opinion & Order, 745 F.Supp. 908, 911 (S.D.N.Y.1990).

ket employees who work pre-shift overtime are entitled to a rest period or break between the end of the overtime period and the start of the regular shift. Employees at Star Market may leave the premises during their rest periods without requesting their supervisors' permission. It was the practice of Star Market employees working pre-shift overtime to leave early for their break if they completed their work.

At about 9:00 p.m., Henderson completed his pre-shift overtime assignment. After checking with his fellow employees whether his services were needed, he left the Star Market facility to buy some cold medicine, get something to eat, and conduct some union business. Upon returning for his regular shift at 10:00 p.m., Star Market supervisory personnel suspended Henderson. On May 13, 1991, Star Market management terminated Henderson because he "stole company time" by leaving the facility before his pre-shift overtime period ended.

Henderson filed a grievance pursuant to the collective bargaining agreement between Local 25 and Star Market. On June 12, 1991, an arbitrator held a hearing on Henderson's grievance. In a decision dated July 17, 1991, that was based solely upon the terms of the collective bargaining agreement, the arbitrator found that Star Market was justified in discharging Henderson and therefore denied his grievance. Henderson also filed a protest under the Election Rules, asserting that his discharge was politically motivated. The Election Officer deferred action on Henderson's protest pending the arbitrator's decision.

Because the arbitrator's decision did not address Henderson's claims of retaliation in violation of the Election Rules, the Election Officer decided to go forward with Henderson's protest. The Election Officer's investigation of the protest revealed that on May 2, 1991, Star Market employees other than Henderson who worked pre-shift overtime in the perishables department left their work stations before the overtime period ended. Only Henderson, however, was terminated for doing so. The investigation further revealed that the discipline imposed on Henderson was far more severe than that imposed on others who had committed similar infractions.

In his September 9, 1991 decision, the Election Officer found that Star Market had retaliated against Henderson for engaging in Union Election campaign activity that is protected by the Election Rules. Accordingly, the Election Officer directed Star Market to reinstate Henderson to his former position with full seniority, full back pay, and full restoration of all other benefits, and to cease and desist from discriminating against Henderson or any other employee on account of campaign or other activities protected by the Election Rules.

Exercising its rights under the Election Rules, Star Market appealed the Election Officer's September 9, 1991 decision to the Independent Administrator. *See* Election Rules, Art. XI, § 1(a)(5). On September 18, 1991, the Independent Administrator issued a decision affirming the Election Officer's decision in all respects. In that decision, the Independent Administrator found that "[g]iven the background here, there can be only one explanation for Star Market's actions. It was retaliating against Mr. Henderson because of his political activity and his support of Carey. The Election Rules simply do not tolerate such action." (Ind.Admin.Dec. at 10.)

Star Market has neither complied with the Independent Administrator's directive to reinstate Henderson, nor has it appealed the Independent Administrator's decision to this Court. Pursuant to Article XI, § 1(a)(8), the Independent Administrator's decision "must be followed unless it is stayed or overturned by the Court." In a letter to the Government dated September 26, 1991, counsel for Star Market expressly stated that Star Market would not comply, whereupon the Election Officer requested that the Government initiate appropriate contempt proceedings against Star Market. By letter dated October 3, 1991, the Government informed Star Market's counsel that unless the company complied with

the Election Officer's directives by October 7, the Government would initiate civil contempt proceedings before this Court. By letter dated October 10, 1991, Star Market's counsel informed the Government that the company would not comply.

On October 24, 1991, the Government brought an Order to Show Cause why this Court should not: (1) affirm the September 18, 1991 decision of the Independent Administrator in Election Appeal 91—Elec. App.–187, which affirmed the September 9, 1991 decision of the Election Officer in Election Office Case No. P–760–LU25–ENG; (2) enter an order directing Star Market to comply fully, within twenty-four hours, with the September 18, 1991 decision of the Independent Administrator in Election Appeal 91—Elec.App.–187, which affirmed the September 9, 1991 decision of the Election Officer in Election Office Case No. P–760–LU25–ENG; (3) in the event that Star Market fails to comply with this Court's order, adjudge Star Market in civil contempt and impose coercive sanctions, including substantial daily fines of at least $10,000 per day until Star Market complies as directed; and (4) award the Government, the Election Officer and the Independent Administrator such other relief, including attorney's fees, as this Court deems appropriate. This Court signed the Order to Show Cause and made it returnable for October 28, 1991, at which time this Court heard argument from both the Government and Star Market.

## II. DISCUSSION

Star Market, although it did not appeal the Independent Administrator's decision to this Court, now objects to that decision. Specifically, Star Market asserts that: (1) this Court lacks subject matter jurisdiction because Star Market is not subject to the Consent Decree; (2) this Court lacks personal jurisdiction over Star Market; (3) the Election Officer and the Independent Administrator's handling of this matter deprived Star Market of due process; (4) the arbitrator's decision is a final and binding adjudication of this matter that pre-empts the decisions of the Election officer and the Independent Administrator; and (5) the

Election Officer violated the Election Rules. This Court finds that Star Market waived its objections to the Independent Administrator's decision, and, in the alternative, that Star Market's objections are wholly without merit.

### A. Waiver

Pursuant to the Election Rules, Article XI, § 1(a)(8), the Independent Administrator's decision "must be followed unless it is stayed or overturned by the Court." The Election Rules have the force of Court Orders and are "enforceable upon pain of contempt." July 10, 1990, Opinion & Order, 742 F.Supp. 94, 108 (S.D.N.Y.1990), aff'd, 931 F.2d 177 (2d Cir.1991). Star Market did not take the opportunity to appeal the Independent Administrator's decision to this Court. Rather, it brazenly disregarded that decision. Only now that the Government has moved for an order directing compliance under pain of contempt does Star Market argue the merits of the Independent Administrator's decision to this Court.

By failing to appeal that decision to this Court, Star Market waived its rights to contest the merits of the decision. To hold otherwise would encourage parties to disregard the Independent Administrator's decisions until the Government seeks compliance in this Court upon pain of contempt. This Court will not reward parties who flout the Independent Administrator's decisions by allowing them to delay compliance until the Government incurs the expense, time, and effort involved in seeking an order in this Court directing compliance. Furthermore, such a rule promotes enforcement and speedy resolution of Election Rule violations, which helps to ensure an "honest, fair, and free election completely secure from harassment, intimidation, coercion, hooliganism, threats, or any variant of these no matter under what guise." July 10, 1990 Opinion & Order, 742 F.Supp. 94, 94 (S.D.N.Y.1990), aff'd, 931 F.2d 177 (2d Cir.1991).

## B. Star Market's Objections

Even if Star Market had not waived its right to contest the merits of the Independent Administrator's decision, Star Market's objections are wholly without merit.

### 1. Subject Matter Jurisdiction

Star Market argues that this Court lacks subject matter jurisdiction because the Consent Decree is not binding on non-parties. This Court has rejected identical arguments on several occasions. *See* October 25, 1991 Order, *slip op.* at 6 (S.D.N.Y.1991); April 3, 1991 Opinion & Order (S.D.N.Y.1991) ("Yellow Freight"), *appeal pending*, No. 91–6096 (2d Cir.); May 13, 1991 Memorandum & Order, 764 F.Supp. 817 (S.D.N.Y.1991), *appeal pending*, 91–6140 (2d Cir.). In *Yellow Freight*, this Court determined that pursuant to its authority under the All Writs Act, 28 U.S.C. § 1651, the Election Rules extend to entities that could jeopardize the IBT membership's right to a free, fair and honest election. Specifically, this Court ruled that Yellow Freight, a company employing IBT members but not itself affiliated with the IBT, was subject to the election rules because it was in a position to "frustrate the implementation of the Consent Decree and the election rules." *Id.*; October 25, 1991 Order, *slip op.* at 6 (S.D.N.Y.1991); May 13, 1991, Memorandum & Order, 764 F.Supp. 817, 821 (S.D.N.Y.1991).

As in *Yellow Freight*, the Government does not seek to bind Star Market to the Consent Decree, but simply seeks to prevent it from interfering with the election process. Like the employer in *Yellow Freight*, Star Market is in a position to "frustrate the implementation of the Consent Decree and the Election Rules." This case presents an even greater threat to the IBT membership's right to a free, fair, and honest election than did the employer's conduct in *Yellow Freight*. Star Market injected itself into the election process by terminating a union member for exercising his campaign rights under the Election Rules.[2] Such conduct threatens to chill the future exercise of such rights and ultimately threatens the integrity of the election process. Accordingly, the All Writs Act gives this Court subject matter jurisdiction for the limited purpose of preventing such interference with the Election Rules.

### 2. Personal Jurisdiction

Star Market argues that this Court lacks personal jurisdiction because it does not have minimum contacts with the State of New York or this District. In making such an argument, Star Market ignores the holdings of the Second Circuit and this Court to the contrary. Personal jurisdiction is not required to bind non-parties under the All Writs Act. January 17, 1990 Opinion & Order, 728 F.Supp. 1032, 1048 (S.D.N.Y.), *aff'd*, 907 F.2d 277 (2d Cir.1990). "The All Writs Act gives the Court the power to bind those who are 'not parties to the original suit.'" *Id.* (quoting *In re Baldwin–United Corp.*, 770 F.2d 328, 338 (2d Cir.1985)). Moreover, the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1965(d), "provides for nationwide personal jurisdiction, and this ultimately is a RICO matter." *Id.*

In cases where Congress authorizes nationwide federal jurisdiction, the district court's jurisdiction is co-extensive with the boundaries of the United States. *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir.1974). All that is required is sufficient minimum contacts with the United States, not this State or District. *See United States v. IBT*, 907 F.2d at 281. Thus, a defendant who resides within the territorial boundaries of the United States is subject to personal jurisdiction under nationwide service of process without regard to state jurisdictional statutes. *See Mariash*, 496 F.2d at 1143. Further, it is not necessary that the defendant have the requisite minimum contacts with the state that would exercise jurisdiction. *See, e.g., F.T.C. v.*

---

**2.** The Election Rules state that "[a]ll Union members retain the right to participate in campaign activities, including the right to run for office, to openly support or oppose any candidate, to aid or campaign for any candidate, and to make personal campaign contributions." Article VIII, § 10(a).

*Jim Walter Corp.*, 651 F.2d 251, 256 (5th Cir.1981) ("a resident corporation necessarily has sufficient contacts with the United States to satisfy the requirements of due process"). Accordingly, as a corporation that resides in the United States, Star Market is subject to personal jurisdiction in this action. Star Market's objection to personal jurisdiction is therefore without merit.

### 3. Due Process

Star Market stressed in its papers and at oral argument that the Court Officers are private parties, and not state actors. (Star Market's Mem. at 10). Star Market also stressed in its papers and at oral argument that the hearings conducted by the Election Officer and the Independent Administrator constituted "State Action." (*Id.* at 12–13). The inconsistency between these two arguments seems to elude Star Market's counsel.

■ Because the United States Constitution regulates the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish the challenged conduct constitutes "state action." *United States v. IBT,* 941 F.2d 1292, 1295 (2d Cir.1991). In this case, the Election Officer and the Independent Administrator acted pursuant to the IBT Constitution—a private agreement—and not pursuant to a right or privilege created by the State. *Id.* at 1296. In addition, neither the Election Officer nor the Independent Administrator may fairly be said to be state actors in this case. *Id.* at 1296. Accordingly, because Star Market can not establish the requisite "state action," its constitutional claims must fail.

■ Even if the Election Officer and Independent Administrator's conduct did establish "state action," Star Market's due process claim is frivolous. Due process is "flexible and calls for such procedural protections as the particular situation demands." *Morrisey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In this case, Star Market received all the process that it was due.

Star Market had the opportunity to present its case to the Election Officer, to appeal the Elections Officer's decision to the Independent Administrator, and to appeal that decision to this Court. The Election Officer, the Independent Administrator, and now this Court, have set forth their factual findings and legal reasoning in written opinions. Furthermore, Star Market had over three months to prepare and submit to the Election Officer evidence and arguments in support of its position. As stated previously, Star Market did not avail itself of the opportunity to appeal to this Court. It is inconsistent for Star Market to argue that it did not receive due process, when it failed to take full advantage of the process it was afforded. This inconsistency also seems to elude Star Market's counsel. Accordingly, Star Market's due process claim is frivolous.

### 4. Arbitrator's Decision

■ Star Market argues that because an arbitrator ruled that Star Market did not violate its collective bargaining agreement with IBT Local 25 when it discharged Henderson, the Election Officer may not consider whether the company's action violated the Election Rules. This Court has previously rejected a similar pre-emption argument. In *Yellow Freight,* this Court rejected the assertion that alleged violations of the Election Rules which might also constitute unfair labor practices under the National Labor Relations Act may be adjudicated only by the National Labor Relations Board. April 3, 1991 Opinion & Order, *slip opinion* at 7–8 (S.D.N.Y.1991).

As the Election Officer and the Independent Administrator pointed out, whether Star Market violated the collective bargaining agreement's overtime provisions and whether the company violated the election campaign activity provisions of the Election Rules are two entirely separate inquiries. The Election Officer, the Independent Administrator, and this Court need not defer to an arbitration award that interprets a collective bargaining agreement when adjudicating adjudicate a claim based on an independent source of rights. *See, e.g., Barrantine v. Arkansas Best Freight Systems,* 450 U.S. 728, 101 S.Ct. 1437, 67

L.Ed.2d 641 (1981) (an employee who submitted to arbitration under a collective bargaining agreement could still bring an action under the Fair Labor Standards Act in federal district court based on the same facts); *Alexander v. Gardener–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (employee who submitted to arbitration under a collective bargaining agreement could still bring a Title VII action in federal district court based on the same facts). Henderson's rights under the Election Rules are entirely independent of his rights under Star Market's collective bargaining agreement with Local 25.

In *Barrantine v. Arkansas Best Freight Systems*, 450 U.S. at 737, 101 S.Ct. at 1443, the Supreme Court stated:

> Not all disputes between an employee and his employer are suited for binding resolution in accordance with procedures established by collective bargaining. While courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide substantive guarantees to individual workers.

Henderson's situation is analogous to *Barrantine*. Henderson's protest arises out of a violation of the Election Rules, which constitute a different source of rights than those arising out of the collective bargaining agreement between Star Market and Local 25. Just as Henderson was entitled to file a grievance under the collective bargaining agreement, he was also entitled, as an IBT member, to assert his rights under the court-approved Election Rules, which derived from the court-approved Consent Decree settling the Government's case against the IBT under RICO. Accordingly, Star Market's argument is wholly without merit.

### 5. The Election Rules

Star Market argues that the Election Officer violated Article XI, § 1(a)(4), which provides that "within five days of receipt of the [election] protest, the Election Officer ... shall determine the merits of the protest and ... the appropriate remedy, [or] defer making a determination until after the election." Star Market argues that by waiting to decide the case pending the outcome of the arbitration, the Election Officer can not address this protest until after the election. As with all of Star Market's arguments, this argument misses the point.

First, the Election Officer's decision not to proceed on this election protest pending the outcome of arbitration was an appropriate "remedy" under the first prong of Article XI, § 1(a)(4). Second, the Election Officer may initiate an investigation without a protest. Article XI, § 2 provides that:

> If as a result of any protest filed or any investigation undertaken by the Election Officer *with or without a protest*, the Election Officer determines that these Rules have been violated, or that any other conduct has occurred which may prevent or has prevented a fair, honest and open election, the Election Officer may take whatever remedial action is appropriate. (emphasis added).

The Election Officer's investigation after the arbitrator's decision can therefore be considered an investigation undertaken by the Election Officer without an election protest. Such an investigation is appropriate in this case and consistent with the purpose of ensuring a fair, honest and open election. Accordingly, Star Market's argument is without merit.

### C. The Independent Administrators' Decision

The Government asks this Court to affirm the September 18, 1991 decision of the Independent Administrator. It is well settled that the findings of the Independent Administrator "are entitled to great deference." *United States v. International Brotherhood of Teamsters*, 905 F.2d 610, 616 (2d Cir.1990), *aff'g* March 13, 1990 Opinion & Order, 743 F.Supp. 155 (S.D.N.Y.1990). This Court will overturn the findings of the Independent Administrator when it determines that they are, on the basis of all the evidence, "arbitrary or

capricious." *Id.* at 622; October 25, 1991, Order, *slip opinion,* at 4–5 (S.D.N.Y.1991); October 24, 1991 Memorandum & Order, *slip opinion,* at 4–5 (S.D.N.Y.1991); October 16, 1991 Memorandum & Order, *slip opinion,* at 4–5 (S.D.N.Y.1991); October 11, 1991 Memorandum & Order, *slip opinion,* at 3 (S.D.N.Y.1991); October 9, 1991 Memorandum & Order, *slip opinion,* at 5 (S.D.N.Y.1991); August 14, 1991 Memorandum & Order, *slip opinion,* at 4 (S.D.N.Y.1991); July 31, 1991 Memorandum & Order, *slip opinion* at 3–4 (S.D.N.Y.1991); July 18, 1991 Memorandum & Order, *slip opinion* at 3–4 (S.D.N.Y.1991); July 16, 1991 Opinion & Order, *slip opinion,* at 3–4 (S.D.N.Y.1991); June 6, 1991 Opinion & Order, *slip opinion,* at 4–5 (S.D.N.Y.1991); May 13, 1991 Memorandum & Order, 764 F.Supp. 817, 820–21 (S.D.N.Y.1991); May 9, 1991 Memorandum & Order, 764 F.Supp. 797, 800 (S.D.N.Y.1991); May 6, 1991 Opinion & Order, 764 F.Supp. 787, 789 (S.D.N.Y.1991); December 27, 1990 Opinion & Order, 754 F.Supp. 333, 337 (S.D.N.Y.1990); September 18, 1990 Opinion & Order, 745 F.Supp. 189, 191–92 (S.D.N.Y.1990); August 27, 1990 Opinion & Order, 745 F.Supp. 908, 911 (S.D.N.Y.1990); March 13, 1990 Opinion & Order, *supra,* 743 F.Supp. at 159–60, *aff'd,* 905 F.2d at 622; January 17, 1990 Opinion & Order, 728 F.Supp. 1032, 1045–57, *aff'd,* 907 F.2d 277 (2d Cir.1990); November 2, 1989 Memorandum & Order, 725 F.Supp. 162, 169 (S.D.N.Y.1989). Star Market argues that the decision of the Independent Administrator was arbitrary and capricious.

■ Notwithstanding Star Market's contention, the decision of the Independent Administrator was fully supported by the record and was neither arbitrary nor capricious. Applying the mixed motive analysis standard established in *NLRB v. Wright Line,* 251 NLRB 10182, 105 LRRM 1169 (1980), *aff'd,* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982), the Independent Administrator found that Henderson made a *prima facie* showing that his support of Carey was a motivating factor in his discharge. (Ind.Admin.Dec. at 8). Further,

the Independent Administrator found that Star Market did not rebut its burden of demonstrating that it would have discharged Henderson regardless of his campaign activity. (*Id.* at 8–9). Two major considerations support the finding that Star Market discharged Henderson because of his campaign activities; the Independent Administrator found that there was no evidence of an employee ever having been terminated for "stealing time," and that other employees who left their work stations before the overtime period ended were not disciplined. Based on these considerations and a review of all the evidence, the Independent Administrator determined that the only explanation for Star Market's actions was that "[i]t was retaliating against Mr. Henderson because of his political activity and his support of Carey." (Ind.Admin.Dec. at 10).

The decision of the Independent Administrator is fully supported by the record and is neither arbitrary nor capricious. Star Market's arguments to the contrary are wholly without merit. Accordingly, the decision of the Independent Administrator is affirmed. Star Market is therefore ordered to comply fully with the September 18, 1991 decision of the Independent Administrator in Election Appeal 91—Elec. App.–187, which decision affirmed the September 9, 1991 decision of the Election Officer in Election Office Case No. P–760–LU25–ENG. Full compliance must take place within twenty-four hours of the filing of this opinion and order.

*D. Civil Contempt*

■ A court may exercise its inherent power to hold a party in civil contempt when: (1) the order the party allegedly failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the party has not diligently attempted in a reasonable manner to comply. *New York State Nat'l Organ. for Women v. Terry,* 886 F.2d 1339, 1351 (2d Cir.1989). A civil contempt sanction may serve either to coerce the contemnor into future compliance or to compensate the complainant for losses resulting from the contemnor's past noncom-

pliance. *Id.* at 1352. A person charged with civil contempt is entitled to notice of the allegations, the right to counsel, and a hearing at which the plaintiff bears the burden of proof and the defendant has an opportunity to present a defense. *United States v. City of Yonkers*, 856 F.2d 444, 452 (2d Cir.1988), *rev'd on other grounds*, 493 U.S. 265, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990).

▇ As this Court has previously stated, the Election Rules are the linchpin of the Consent Decree's attempt to cleanse the IBT of the hideous influence of Organized Crime. July 10, 1990 Opinion & Order, 742 F.Supp. at 97. Star Market has violated the Election Rules by firing Henderson, a political opponent of Teamster's officials whom the company apparently favors, for engaging in clearly protected union election activity. In addition, Star Market's scorn for the dispute resolution process established by the Election Rules, and approved by this Court and the Second Circuit, has been as egregious as the company's discriminatory treatment of Henderson.

▇ In the event that Star Market fails to comply with this Court's order, Star Market shall be adjudged in civil contempt, and will incur a coercive sanction of $10,-000 per day until Star Market complies as directed by this Court. In addition, an award of attorney's fees and other expenses to the Government and the court-appointed officers will serve to compensate them for Star Market's baseless refusal either to comply with the Election Officer's order as affirmed by the Independent Administrator or to appeal that decision to this Court. To this end, the Government, the Election Officer and the Independent Administrator are directed to submit affidavits, within ten days of the filing of this opinion and order, of attorneys' fees and other expenses incurred in connection with Star Market's refusal to comply with the Election Officer's decision as affirmed by the Independent Administrator. Further, Star Market shall submit to this Court an affidavit by a person in a senior management position stating that it has complied with this Court's order and shall also submit to this Court a copy of the letter it sends to Henderson which states that he is reinstated with full seniority, full back pay and benefits.

### E. The Stay

▇ In the event that this Court granted the Government's application, Star Market petitioned this Court for a stay of its order. In this circuit, the standards for issuing a stay encompass the following considerations: (a) Whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (b) Whether the applicant will be irreparably injured absent a stay; (c) Whether the issuance of a stay will substantially injure other parties interested in the proceedings; and (d) Where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987).

Applying these criteria to the instant application, I find that the request for a stay is denied. First, as fully set forth above, the movants have not made a strong showing that they are likely to succeed on the merits. Second, I find that the movants will face no irreparable harm from the remedies ordered to correct the retaliatory action taken by Star Market in violation of the Election Rules. The third criteria is whether staying the ruling will cause injury to any other interested party. Granting a stay will prejudice Henderson, the candidates for IBT office, and the IBT rank and file in general. Finally, the public interest lies in furthering the noble goal of promoting a fair, honest and open IBT election. Over the years, the IBT has been tarnished with a patina of corruption, thus actions to clear this ignominious and sordid history seem indubitably in the interest of IBT officials, the IBT rank and file, and the public as well. The petition for a stay is hereby denied.

### CONCLUSION

In sum, the orders of this Court are as follows:

IT IS HEREBY ORDERED that the September 18, 1991 decision of the Indepen-

dent Administrator in Election Appeal 91—Elec.App.–187, which decision affirmed the September 9, 1991 decision of the Election Officer in Election Office Case No. P–760–LU25–ENG, is affirmed; and

IT IS FURTHER ORDERED that Star Market must comply fully, within twenty-four hours of the filing of this opinion and order, with this Court's order which affirms the September 18, 1991 decision of the Independent Administrator in Election Appeal 91—Elec.App.–187, which decision affirmed the September 9, 1991 decision of the Election Officer in Election Office Case No. P–760–LU25–ENG; and

IT IS FURTHER ORDERED that in the event that Star Market fails to comply with this Court's order, Star Market shall be adjudged in civil contempt, and will incur a coercive sanction of $10,000 per day until Star Market complies as directed by this Court; and

IT IS FURTHER ORDERED that Star Market shall compensate the Government, the Election Officer and the Independent Administrator for their attorney's fees and other expenses incurred in connection with Star Market's baseless refusal to comply with the Election Officer's decision as affirmed by the Independent Administrator; and

IT IS FURTHER ORDERED that the Government, the Election Officer and the Independent Administrator submit affidavits, within ten days of the filing of this opinion and order, of attorneys fees and other expenses incurred in connection with Star Market's baseless refusal to comply with the Election Officer's decision as affirmed by the Independent Administrator; and

IT IS FURTHER ORDERED that Star Market shall submit to this Court an affidavit by a person in a Senior Management position stating that it has complied with this Court's order, and Star Market shall also submit to this Court a copy of the letter it sends to Henderson in which it indicates that he is reinstated with full seniority, full back pay and benefits; and

IT IS FURTHER ORDERED that Star Market's petition for a stay is denied.

SO ORDERED.