**Richard Franklin MILLER, et al., Plaintiffs,**

v.

**Dale CARSON, etc., et al., Defendants.**

**T. Edward Austin, Amicus Curiae.**

**No. 74–382–Civ–J–S.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Nov. 4, 1982.

---

William J. Sheppard, Jacksonville, Fla., for plaintiffs.

Robert G. Alexander, Asst. Gen. Counsel, Laurence C. Pritchard, Asst. State Atty., T. Edward Austin, State Atty., Jacksonville, Fla., Sydney H. McKenzie, III, Chief Trial Counsel, James Peters, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for defendants.

## ORDER

CHARLES R. SCOTT, Senior District Judge.

This matter came on to be heard upon plaintiffs' notice of violations of the permanent injunction. The Court has ordered defendants to show cause why they should not be held in civil contempt for the violations alleged by plaintiffs. A show cause hearing was held on this date.

In their written notice, plaintiffs state that they were informed by counsel for defendants that the midnight population count at the Duval County Jail was 437 inmates on October 10, 1982 and 429 inmates on October 11, 1982. Paragraph 2 of Section III of the permanent injunction of July 17, 1975, as modified by the Court order of April 1, 1980, provides as follows:

The number of inmates in the jail shall not exceed 418 inmates on a normal daily basis. However, the inmate population may be increased, on a strictly emergency basis, to 432 for a period of no more than 72 hours.

Defendants essentially admit that the Duval County Jail inmate population exceeded the normal daily maximum capacity of 418 inmates on the dates alleged by plaintiffs but assert that these violations were unavoidable because of the tremendous administrative burdens caused by the new bail bond procedure. Defendants further assert that they have made good faith efforts to maintain the inmate population under the court-ordered cap. Finally, defendants request that the court authorize a temporary increase in the maximum capacity to 432 inmates through January 15, 1983 or the date of the opening of the third floor of the Trusty Housing Unit.

 Whether a contempt proceeding is civil or criminal in nature is determined by the character and purpose of the action. *Shillitani v. United States,* 384 U.S. 364, 369, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622 (1966). Civil contempt is remedial in nature and generally designed to either coerce compliance with a court order or to compensate the plaintiff for any losses sustained. *United States v. United Mine Workers of America,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). Since the issue presently before the Court concerns alleged violations of the Court's permanent injunction, it is clear that this is a civil rather than a criminal proceeding.

 Civil contempt proceedings generally are summary in nature. However, a person charged with civil contempt is entitled to have counsel present, to be given adequate notice and to have an opportunity to be heard. *United States v. Anderson,* 553 F.2d 1154, 1155 (8th Cir. 1977). The Court finds that defendants have had adequate notice of the alleged violations and of the show cause hearing.

 In a civil contempt proceeding, proof of the defendants' violations must be clear and convincing.· *United States v. Rizzo,* 539 F.2d 458, 465 (5th Cir.1976). A simple preponderance of the evidence is insufficient. However, the violation of the order need not be willful for a party to be held in civil contempt. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 197, 69 S.Ct. 497, 502, 93 L.Ed. 599 (1949). Once a party has been found to be in civil contempt, the Court may impose appropriate sanctions to coerce compliance, such as a fine or incarceration. C. Wright & A. Miller, Federal Practice And Procedure § 2960 at 584–85.

A brief review of the history of this case is necessary to place the current issues pending before the Court in the proper perspective. This action commenced on June 11, 1974 when Richard Franklin Miller, a federal detainee temporarily housed in the Duval County Jail awaiting transfer to a federal institution, filed a hand-written pro se "Petition for Injunction", complaining of the conditions of confinement at the jail. The Court entered an order allowing plaintiffs to proceed in forma pauperis and subsequently certified the action as a class action on behalf of all persons who were presently or in the future would be incarcerated in the Duval County Jail. Following extensive discovery and an evidentiary hearing, the Court entered a declaratory judgment on January 31, 1975, with supporting findings of fact and conclusions of law, which declared, *inter alia,* that the conditions in the Duval County Jail constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.

Contemporaneously with the entry of the declaratory judgment, the Court entered a preliminary injunction, enjoining defendants from continuing the practices found to be unconstitutional. In response to numer-

ous complaints concerning alleged violations of the preliminary injunction, the Court appointed an ombudsman to inspect the jail and conduct hearings concerning the alleged violations. As a result of the ombudsman's report to the Court citing various violations of the preliminary injunction, the Court ordered defendants to show cause why the Duval County Jail should not be closed for failure to maintain the facility in accordance with minimum constitutional standards.

On July 17, 1975, prior to ruling on the issues raised by the order to show cause, the Court entered a permanent injunction enjoining defendants from further operating and maintaining the Duval County Jail in a manner which would infringe upon plaintiffs constitutional and statutory rights. The permanent injunction sets forth in detail the conditions of confinement that must be maintained in order to avoid violating plaintiffs' constitutional and statutory rights. With regard to overcrowding, the Court provided that the inmate population could not exceed 410 inmates on a normal daily basis but that the inmate population could be increased, on a strictly emergency basis, to 432 inmates for a period of no more than 72 hours.

Defendants appealed from the Court's permanent injunction entered on July 17, 1975. With the exception of a minor modification concerning the appointment of an ombudsman, the Court of Appeals affirmed the Court's decision, holding, *inter alia,* that the totality of the conditions of the jail demonstrated that defendants' operation of the jail violated plaintiffs' constitutional rights. *Miller v. Carson,* 563 F.2d 741 (5th Cir.1977). This case was remanded for further appropriate remedial proceedings consistent with the Court's opinion.

On several occasions, defendants moved for orders allowing an increase in the population capacity at the Duval County Jail to 432 persons on an emergency basis for 72 hours in accordance with the permanent injunction. In each instance defendants represented to the Court that a judge of the Fourth Judicial Circuit in and for Duval County had advised the Sheriff that 80 to 90 fathers delinquent in child support were to appear in court on a particular day and that most likely the majority of them would also be sentenced on the same day. Since it was clear that under such circumstances the increase of the capacity in the jail to 432 inmates would be only temporary and on an emergency basis, the Court granted defendants' motions.

On April 7, 1980, the Court approved the use of a newly-constructed eight-person cell on the second floor of the jail. The Court, therefore, increased the inmate capacity on a normal daily basis from 410 to 418 inmates.

Plaintiffs filed a notice of a violation of the permanent injunction on December 17, 1980, alleging that the midnight population of the Duval County Jail had exceeded the maximum capacity under the permanent injunction on 25 occasions from July 26, 1980 through December 1, 1980. An exhibit submitted by plaintiffs further indicated that the inmate population of the jail exceeded the normal daily capacity for five consecutive days from November 12, 1980 through November 16, 1980, thus exceeding the 72-hour time limit. The Court ordered defendants to show cause why they should not be held in civil contempt and a hearing was held on January 8, 1981.

Defendants admitted that the population of the jail had exceeded the court-ordered cap on the occasions set forth in the notice of violation. Defendants, however, argued that these violations were not the result of willfulness or negligence, but rather were inescapable in light of defendant Carson's duty to the safety and welfare of the people of Jacksonville. In an order entered on January 9, 1981, the Court found that defendant Berg, Chief of Jails, and those correctional officers responsible for the administration of the Duval County Jail had made a good faith effort to remain within the court-imposed limitations on the jail capacity. The Court, however, noted that a good faith effort was no defense and concluded that defendants had shown no just cause for their failure to comply with the maxi-

mum capacity provision of the permanent injunction. Although defendants were found to be in civil contempt, the Court imposed no sanctions but noted that future violations would require appropriate sanctions. The Court further provided that defendants could purge themselves of civil contempt by maintaining the inmate population within the maximum capacity under the permanent injunction. In their response to the current allegations, defendants state that subsequent to the Court's order of January 9, 1981, computation errors were discovered indicating that the cap was exceeded on four rather than 25 occasions.

Pursuant to notices of three other alleged violations of the permanent injunction filed by plaintiffs, a show cause hearing was held on December 16, 1980. On December 22, 1980 the Court entered an order holding defendants in civil contempt and providing that defendants could purge themselves of civil contempt by taking the necessary steps to comply with the terms of the permanent injunction on or before December 31, 1980. The Court further ordered:

> That in the event that defendants fail to bring the Duval County Jail into compliance with the aforesaid terms of the Court's permanent injunction by December 31, 1980, defendants shall be fined in the amount of One Thousand Dollars ($1,000) per day for each day after December 31, 1980, that defendants fail to comply with the aforesaid terms of this Court's permanent injunction, and that defendants shall pay said fine to the Clerk of the United States District Court, Middle District of Florida, to be deposited in the United States Treasury.

On January 12, 1981, the Court found that defendants had purged themselves of civil contempt by bringing the Duval County Jail into compliance with the permanent injunction in accordance with the order entered on December 22, 1980.

■ On August 31, 1982, the Honorable Clifford B. Sheppard, Chief Judge of the Fourth Judicial Circuit in and for Duval County, Florida, entered an administrative order rescinding the standard bond schedule previously used at the Duval County Jail and prohibiting the setting of bond by anyone other than a judge or magistrate during a first appearance. The Court is very much aware that this administrative order eliminated many of the methods previously employed at the Duval County Jail to maintain the inmate population within the maximum capacity under the permanent injunction. However, the additional administrative burden upon the jail that may have indirectly resulted from the implementation of the new bail bond procedure does not relieve defendants of their obligation to ensure compliance with the permanent injunction and is no defense to a charge of civil contempt.

■ Upon review of the report of the court-appointed ombudsmen filed on September 22, 1982, the Court finds that defendant Berg, Chief of Jails and those correctional officers responsible for the administration of the Duval County Jail have made good faith efforts to maintain the inmate population within the maximum capacity imposed by the Court. In particular, the Court acknowledges Chief Berg's extensive efforts in renovating the third floor of the Trusty Housing Unit to house unsentenced misdemeanants. As previously mentioned, however, the good faith effort of defendants is not a defense to a charge of civil contempt.

■ The Court does not agree with defendants' assertion that a violation of the court-ordered cap was simply an unavoidable result of the new bail bond procedure. Furthermore, unlike the prior instances in which the cap was increased to 432 inmates in anticipation of the sentencing of a large number of defendants, defendants have failed to show any circumstances that would have justified an increase in the maximum capacity of the jail on an emergency basis on the dates in question. In any event, the inmate population was 437 on October 10, 1982 and, therefore, even exceeded the emergency maximum capacity of 432. The Court, therefore, finds that defendants are in civil contempt for failing

to maintain the inmate population at the Duval County Jail within the court-ordered cap of 418 inmates on October 10 and October 11, 1982.

Defendants have certainly had fair warning of the possibility of the imposition of sanctions for failure to comply with the permanent injunction. As previously discussed, defendants were found in civil contempt on December 22, 1980 and January 8, 1981 for violating the terms of the permanent injunction. In each instance the Court refrained from imposing sanctions but admonished defendants that appropriate sanctions would be imposed if further violations occurred. In light of defendants' previous violations of the permanent injunction, failure to impose sanctions for the violations currently under consideration would effectively give defendants a license to violate the terms of the permanent injunction whenever necessary. The Court, therefore, has no alternative but to impose a sanction for defendants' violations of the Court-ordered cap to ensure future compliance with the permanent injunction.

 The Court will fine defendants Five Thousand Dollars ($5,000) per day for the violations of the maximum capacity provision of the permanent injunction on October 10 and October 11, 1982 and, thus, will impose a total fine of Ten Thousand Dollars ($10,000). In the event of future violations, the Court will impose appropriate sanctions under the circumstances, including, if necessary, fines in excess of Five Thousand Dollars ($5,000) per day.

Defendants request that the maximum capacity of the jail be increased to 432 inmates through January 15, 1983 or the date of the opening of the third floor of the Trusty Housing Unit, whichever occurs first. Defendants have informed the Court that completion of the smoke evacuation system is necessary before the opening of the third floor of the Trusty Housing Unit. Defendants further state that the City's Purchasing Code was by-passed under an emergency order and a $400 per day "bonus" was implemented to encourage early completion of the third floor.

Obviously, this request does not fall within the provision of the permanent injunction providing for an increase of a maximum capacity of the jail to 432 inmates on an emergency basis for 72 hours. Defendants are not seeking a temporary increase in the maximum capacity of the jail on an emergency basis, but rather are essentially requesting that the normal daily maximum capacity be increased from 418 to 432 inmates. Accordingly, the Court will deny defendants' request. However, as the Court has done on prior occasions, the Court will consider requests by defendants for an increase in the maximum capacity of the jail to 432 inmates on an emergency basis for a period of 72 hours in accordance with the permanent injunction. To obtain such approval, defendants must show that an emergency exists which warrants a temporary increase in the maximum capacity of the jail, such as evidence that a large number of defendants will probably be sentenced on a particular day. Since the permanent injunction does not explicitly require court approval to increase the maximum capacity of the jail to 432 inmates on an emergency basis for a period of 72 hours, the Court will modify the permanent injunction to reflect this change.

In accordance with the foregoing findings of fact and conclusions of law, it is

ORDERED and ADJUDGED:

1. That the defendants, Dale Carson, individually and in his capacity as Sheriff of Duval County, Florida, and the Consolidated City of Jacksonville, Florida; Jake M. Golbold, individually and in his capacity as Mayor of the Consolidated City of Jacksonville, Florida; Henry W. Cook, individually and in his capacity as President of the City Counsel of the Consolidated City of Jacksonville, Florida; Fred W. Murray, Jr., individually and in his capacity as Deputy Director of Prisons & Jails, Consolidated City of Jacksonville, Florida; and Michael A. Berg, individually and in his capacity as Chief of Jails, Consolidated City of Jacksonville, Florida, are in civil contempt for failure to comply with Section III, paragraph 2 of this Court's permanent injunction, as

modified by the order entered by this Court on April 1, 1980.

2. That defendants, in their individual and official capacities as set forth in paragraph 1 of this order, are hereby fined a total of Ten Thousand Dollars ($10,000) for their failure to maintain the inmate population at the Duval County Jail within the normal daily maximum capacity of 418 inmates on October 10 and October 11, 1982, in violation of this Court's permanent injunction as modified by the order entered by this Court on April 1, 1980. Defendants may purge themselves of civil contempt by paying said fine on or before November 15, 1982 to the Clerk of the United States District Court for the Middle District of Florida, Financial Office, Jacksonville, Florida, to be deposited in the United States Treasury.

3. In the event of future violations, the Court will impose appropriate sanctions under the circumstances, including, if necessary, fines in excess of Five Thousand Dollars ($5,000) per day.

4. Defendants' request that the maximum capacity of the Duval County Jail be increased to 432 inmates through January 15, 1983 or the date of the opening of the third floor of the Trusty Housing Unit, whichever occurs first, is hereby denied.

5. Section III, paragraph 2 of the permanent injunction entered on July 17, 1975 and as amended by order of the Court on April 1, 1980, is hereby further modified to provide as follows:

The number of the inmates in the jail shall not exceed 418 inmates on a normal daily basis. However, upon approval of the Court, the inmate population may be increased, on a strictly emergency basis, to 432 inmates for a period of no more than 72 hours.

6. The United States Marshal shall serve a copy of this order on each of the above-named defendants forthwith.

DONE, ORDERED and ADJUDGED at Jacksonville, Florida, this 4th day of November, 1982.