**L. Lea NABKEY, Plaintiff,**

v.

**R. Stuart HOFFIUS, Defendant.**

No. 1:83–CV–1155.

United States District Court,
W.D. Michigan, S.D.

July 12, 1993.

L. Lea Nabkey in pro per.

Teresa S. Decker, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, for defendant.

## OPINION OF THE COURT

McKEAGUE, District Judge.

On July 7, 1993, the Court conducted a show cause hearing to determine whether plaintiff L. Lea Nabkey is in contempt of Court. At the conclusion of the hearing, the Court found Miss Nabkey to be in contempt and imposed sanctions. This opinion summarizes the Court's findings, conclusions and sanctions.

### I.

At the conclusion of trial in this matter on June 9, 1993, in which plaintiff's remaining claim was dismissed at the close of plaintiff's proofs under Fed.R.Civ.P. 50(a), the Court issued two orders from the bench. First, observing that plaintiff had failed to return her copies of juror questionnaires provided to her in conjunction with the trial, the Court ordered her to return the questionnaires to the Court Clerk not later than 5:00 p.m. on

June 10, 1993. Second, the Court ordered both parties to refrain from attempting to communicate with members of the jury or venire who had participated in the trial proceedings. These orders were reiterated and memorialized in a written order issued the next day.

On June 14, 1993, the Court was apprised by the Clerk of the Court of reasons to believe that plaintiff had violated both of the above orders. By order dated June 21, 1993, plaintiff was thereupon ordered to present herself to the Court on July 7, 1993, and show cause why she should not be held in contempt.

## II.

The Court's contempt power is defined at 18 U.S.C. § 401:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

This definition is not exclusive, however, for the federal courts have long been recognized to have inherent power to enforce submission to their lawful mandates in furtherance of managing their affairs so as to achieve the orderly and expeditious disposition of cases. *Chambers v. NASCO, Inc.*, —— U.S. ——, ——, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991).

The manner of proceeding to determine whether the charged party is in contempt is dependent upon the purpose of the enforcement measure contemplated. If the purpose is coercive or remedial (to secure compliance with the Court's order), or compensatory (to make the injured party whole), then "civil contempt" is implicated. If the purpose is punitive (to vindicate the Court's authority), then "criminal contempt" is implicated. See *In re Jaques*, 761 F.2d 302, 305–

06 (6th Cir.1985), *cert. denied* 475 U.S. 1044, 106 S.Ct. 1259, 89 L.Ed.2d 570 (1986). The Court is obliged in contempt cases to employ "the least possible power adequate to the end proposed." *Shillitani v. United States*, 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966); *Taberer v. Armstrong World Ind.*, 954 F.2d 888, 895 (3rd Cir.1992). That is, the Court should resort to criminal sanctions only after determining, for good reason, that the civil remedy would be inappropriate. *Shillitani*, 384 U.S. at 371, n. 9, 86 S.Ct. at 1536, n. 9.

The Court's primary concern in issuing the orders in question and in inquiring into plaintiff's compliance therewith, is protection of the privacy of the jurors and veniremen who participated in the trial. The Court is satisfied that civil contempt proceedings are adequate to fulfill this purpose.

The due process safeguards customarily applicable to civil litigation apply to civil contempt proceedings as well. That is, the charged party is entitled to proper notice, an impartial hearing, and an opportunity to present a defense. *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 589 (6th Cir. 1987); *TWM Mfg. Co., Inc. v. Dura Corp.*, 722 F.2d 1261, 1272 (6th Cir.1983). Generally, civil contempt proceedings are summary in nature. *Miller v. Carson*, 550 F.Supp. 543, 545 (M.D.Fla.1982). The full panoply of evidentiary and procedural safeguards of criminal proceedings or trial need not be employed. *In re Grand Jury Proceedings, Hellman*, 756 F.2d 428, 430 (6th Cir.1985).

The charged party may be held in contempt when (1) the order violated is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the party has not diligently attempted in a reasonable manner to comply. *United States v. Int'l Brotherhood of Teamsters*, 776 F.Supp. 144, 154 (S.D.N.Y.1991). The charged party's good faith is no defense. *Peppers v. Barry*, 873 F.2d 967, 968 (6th Cir.1989). The person found not to have complied with an order of the Court of which he had notice will be held in contempt unless he shows he was unable to comply after taking all reasonable steps within his power to do so. *Id.*, 873

F.2d at 969; *Citizens for a Better Environment v. Wilson*, 775 F.Supp. 1291, 1300 (N.D.Cal.1991). Once a prima facie showing of violation has been made, the charged party has the burden of proving inability to comply. *United States v. Ciampitti*, 669 F.Supp. 684, 687 (D.N.J.1987).

### III.

When plaintiff Miss Nabkey appeared for the show cause hearing on July 7th, the Court inquired as to how she answered the charge that she had violated the Court's orders. She responded that she did not understand the charges, asserted that she was not competent to assist in her own defense, and requested that an attorney be appointed to represent her. The Court explained, as reflected in the order to show cause, that there was reason to believe that she had not timely returned the jury questionnaires and that she had communicated with one of the jurors. The Court asked what exactly Miss Nabkey failed to understand. In response, she simply reiterated her request for appointment of counsel. The Court informed Miss Nabkey that she was not entitled to appointment of counsel and denied her request. Again, the Court asked how she answered the charges. Again, she requested appointment of counsel and refused to otherwise defend.

From the inception of this case nearly ten years ago, Miss Nabkey has proceeded *pro se* and *in forma pauperis*. At least three times previously, her requests for appointment of counsel have been denied. Under 28 U.S.C. § 1915(d), the Court may, in its discretion, *request* an attorney to represent any person in a civil or criminal proceeding who is unable, due to indigency, to employ counsel. *Mallard v. U.S. District Court*, 490 U.S. 296, 301–02, 109 S.Ct. 1814, 1818–19, 104 L.Ed.2d 318 (1989). The Court has refrained from doing so because Miss Nabkey has demonstrated her ability to represent herself and because the issues presented by her

claims were not so complex as to suggest that denial of counsel would be likely to result in fundamental unfairness. See *Barnhill v. Doiron*, 958 F.2d 200, 202 (7th Cir. 1992); *DesRosiers v. Moran*, 949 F.2d 15, 24 (1st Cir.1991).

These reasons apply with equal strength in the context of the instant civil contempt proceedings. The charges for which Miss Nabkey is made to answer are eminently clear and understandable, especially to one of her experience and intelligence. In the opinion of this Court, she is certainly competent to represent herself in this matter. If the instant proceedings were in the nature of criminal contempt or if the Court contemplated using its contempt power to incarcerate Miss Nabkey, then her request may have been viewed differently.[1] Accordingly, Miss Nabkey's request for appointment of counsel was and is properly denied.

### IV.

The Court proceeded to receive testimony from Deputy Court Clerks Lois Mieras, Kelly Swiftney and Diane Hopkins, Law Clerk Paul Brandenburg, and Case Manager Barbara Moffit. The Court conducted direct examination, offering Miss Nabkey the opportunity to cross-examine each witness. She declined each offer. She also declined to present any proofs or argument in her defense stating, "I refuse to participate in this charade." Based on the testimony adduced, evidence clear and convincing, the Court makes the following findings of fact:

1. That prior to the commencement of trial on June 8, 1993, Miss Nabkey received two sets of juror questionnaires, one incomplete set and one complete set;

2. That Miss Nabkey had notice of the Court's orders requiring return of the juror questionnaires and prohibiting contact with jurors and veniremen, issued from the bench

---

1. In view of the foregoing authorities setting forth the procedural safeguards that apply to civil contempt proceedings in the Sixth Circuit, caselaw suggesting that there may be a right to counsel can only be reasonably construed as meaning that a civil contemnor is entitled to appointed counsel if incarceration is a prospect or that a civil contemnor has the right to have *retained* counsel present. See *United States v. Int'l Brotherhood of Teamsters, supra*, 776 F.Supp. at 154; *United States v. City of Yonkers*, 856 F.2d 444, 452 (2nd Cir.1988), *rev'd on other grounds* 493 U.S. 265, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990) and cases cited therein.

on June 9, 1993, and in writing on June 10, 1993;

3. That Miss Nabkey did not return any of the questionnaires to the Clerk of the Court prior to 5:00 p.m. on June 10, 1993;

4. That Miss Nabkey returned some, but not all, of the juror questionnaires she had received to the Clerk of the Court on June 14, 1993;

5. That Juror Tina Allen received at her place of employment, a letter dated June 11, 1993, purporting to be from Miss Nabkey;

6. That Ms. Allen telephonically reported her receipt of this letter to Deputy Clerk and Jury Administrator Diane Hopkins and sent a copy of the letter to Ms. Hopkins by facsimile transmission on June 14, 1993;

7. That the complete text of the letter is as follows:

June 11, 1993

Miss Allen:

You were on my jury a few days ago. If you recall, the individual called 'judge' 'ordered' without any legal authority, that neither you nor I should contact one another.

He is out of order and I shall report him. *All* attorneys talk to their juries after a trial and it is perfectly legal and done routinely. He must be afraid of something. You might want to ask an attorney. I am putting this in writing so that if you care to, you may show it to him. I am very busy and at this moment and time, cannot make any calls with much to do in new trial motions, etc . . .

Young people must take an interest in the government and make sure corruption is stamped out as much as possible.

I had a good jury—but the verdict was taken out of your hands. I believe the scenario was perfectly clear.

Miss Nabkey

458–0306

8. That, judging from the contents of the letter, judging from the similarity of the letter to typed filings received by the Court from Miss Nabkey, and judging from the resemblance of a handwritten notation in the margin of the letter ("meaning 'McKeague'," referring to the pronoun "him" in the phrase "you may show it to him") to handwritten correspondence previously received by the Court from Miss Nabkey, the letter was in fact authored and sent to Ms. Allen by Miss Nabkey; and

9. That Ms. Allen reported to Ms. Hopkins and later to Case Manager Barbara Moffit that she was very upset about the letter and was concerned about the possibility of future communications from Miss Nabkey.

## V.

Based upon these findings, the Court concludes that Miss Nabkey has violated both the order requiring her to return all the juror questionnaires by 5:00 p.m. on June 10, 1993, and the order prohibiting communications with jurors. The Court concludes both violations are established by clear and convincing evidence. Further, the Court holds that both orders, issued first from the bench on June 9, 1993, and then in writing on June 10, 1993, are clear, unambiguous, and understandable to the average layperson. Miss Nabkey has not demonstrated that she, after making all reasonable efforts within her power, is unable to comply with either order.[2]

---

2. In fact, Miss Nabkey has offered no defense to the charges. However, insofar as Miss Nabkey's letter to Ms. Allen may be deemed to raise a question concerning the legality of the order prohibiting communications with the jurors, a few comments are in order. There is authority for the proposition that the validity of a *civil* contempt finding is dependent upon the validity of the underlying order. *American Greetings Corp. v. Dan–Dee Imports, Inc.*, 807 F.2d 1136, 1148 (3rd Cir.1986); *Ager v. Jane C. Stormont Hosp. & Training School*, 622 F.2d 496, 499 (10th Cir.

1980). Yet, the order prohibiting contact with the jurors is clearly valid and lawful.

Generally, the federal courts disfavor post-trial interviewing of jurors. *Haeberle v. Texas Int'l Airlines*, 739 F.2d 1019, 1021 (5th Cir.1984); *United States v. Narciso*, 446 F.Supp. 252, 324 (E.D.Mich.1977). "Prohibiting post-verdict interviews protects the jury from an effort to find grounds for post-verdict charges of misconduct, reduces the chances of temptations for tampering with the jury, increases the certainty of civil trials, and spares the district courts time-con-

Accordingly, the Court finds Miss Nabkey to be in contempt of Court.

## VI.

■ In the interests of remedying the invasion of privacy that Miss Nabkey has already visited upon Ms. Allen, and of securing future compliance with the Court's orders, the Court imposes the following sanctions.

First, Miss Nabkey shall return all unreturned copies of juror questionnaires to the Court Clerk not later than 5:00 p.m. on July 8, 1993; or certify in writing that she is unable to locate the unreturned questionnaires and agree in writing not later than 5:00 p.m. on July 8, 1993, that she will return them immediately if she locates them at a later date.

Second, Miss Nabkey shall prepare a letter of apology to Tina Allen and submit it to the Court for approval not later than 5:00 p.m. on July 14, 1993. If the letter conforms to the following instructions, the Court will approve it and forward it to Ms. Allen. The letter shall be no longer than one page, be courteous in tone and free of acrimony. The letter shall include acknowledgement of the Court's order prohibiting contact with the jurors and shall include an apology for the letter of June 11, 1993, mailed in violation of the order. The letter shall include assurance that Miss Nabkey will engage in no further communications with Ms. Allen.

Third, Miss Nabkey shall agree in writing not later than 5:00 p.m. on July 8, 1993, that she will refrain from further contact, direct or indirect, with any of the jurors or veniremen who participated in the trial.

Fourth, Miss Nabkey is enjoined from filing any papers and the Clerk of this Court is ordered to reject all papers submitted by Miss Nabkey for filing in this case file or any other, currently pending or closed or to be opened in the future, in the United States District Court for the Western District of Michigan, with the exception of those filings mandated herein, until she has purged herself of this contempt through compliance with the foregoing requirements, and until this Court certifies that she has so complied.

## VII.

■ The foregoing discussion pertains exclusively to, and the sanctions imposed above are designed exclusively to remedy, Miss Nabkey's specific violations of the Court's recent orders. Viewed in isolation, the infractions do not appear to be terribly offensive or egregious. Commensurately, the sanctions imposed are not severe. While Miss Nabkey's access to this Court is temporarily blocked, she has in her possession "the keys to the Clerk's office." That is, she has within her power, the means, through the satisfaction of the above requirements, to purge herself with relative ease of this contempt finding and of the sanctions' burden.

However, in this ten-year old case, these most recent instances of deliberate disrespect for the Court's authority cannot be viewed in isolation. They are merely the most recent manifestation of a persistent pattern of contumacious conduct.

suming and futile proceedings." *Haeberle, supra,* 739 F.2d at 1021. The First Amendment interests of litigants and attorneys to satisfy their curiosity and improve their advocacy are outweighed by the jurors' interest in privacy and the public's interest in well-administered justice. *Id.,* at 1022. Absent a showing of evidence of juror impropriety, litigants and attorneys have no right to invade the province of the jury room. *United States v. Gravely,* 840 F.2d 1156, 1159 (4th Cir.1988); *Olsson v. A.O. Smith Harvestore Products, Inc.,* 696 F.Supp. 411, 412 (S.D.Ind. 1986).

Here, since the jury was never asked to make a decision, there can be no material evidence of improper juror influence. Miss Nabkey's curios-

ity about how the jury viewed her claim is of no consequence. Further, in view of the facts that Miss Nabkey referred to the jurors very possessively as "her" jury, that Miss Nabkey had addressed the jury in paranoidal terms during her opening statement (concerning the "master tape" audio monitoring of their discussions), and that Miss Nabkey had failed to timely return her juror questionnaires, the order prohibiting communications with the jurors was entirely appropriate and well within the Court's discretionary authority. Moreover, any "good faith" belief Miss Nabkey may have had in the unlawfulness of the Court's order is no defense to contempt. *Peppers v. Barry, supra,* 873 F.2d at 968.

Miss Nabkey's disdain for judicial authority is evidenced first by the fact that this action has at one time or another involved claims against no less then six judges. During the course of this case's tortured history, she has accused them, among others, not simply of erroneously making decisions adverse to or injurious of her rights, but in language scandalous and vexatious, of orchestrating a "cold-blooded," "Machiavellian conspiracy," an "enterprise of terror." Comparing them to Nazi war criminals and members of the Ku Klux Klan, she has charged them with having collaborated in "personal vendettas," "diabolical schemes" and with the commission of "unparalleled atrocities." One by one, the claims have been dismissed for lack of evidence of actionable wrong.

Further, while Miss Nabkey has complained incessantly about the age of this case, review of the file reveals that her disdain for judicial authority has contributed mightily and needlessly to the multiplication and protraction of proceedings. Nearly every adverse ruling has been followed by a motion for reconsideration, then by a motion to set aside, and then often by an appeal to the Sixth Circuit Court of Appeals. None of these machinations has ever merited relief; they have served merely to prolong the case.

Miss Nabkey has also moved for the disqualification of all four judges who have been assigned to this case.[3] When these motions have been denied, she has almost invariably moved for reconsideration and/or petitioned the Court of Appeals for relief. . . . all to no avail. Failing relief through disqualification, Miss Nabkey has even resorted to the bringing of independent civil actions against at least two of the judges.

In the past 13 years, Miss Nabkey has commenced nine civil actions in the United States District Court for the Western District of Michigan. Six of them have included claims against judges.

Further, Miss Nabkey repeatedly exhibited her disdain for the Court during the trial in this case on June 8th and 9th. For the sake of granting Miss Nabkey her long-awaited day in court, the Court patiently tolerated her repeated deliberate interruptions, ignored her proclamations that the Court is corrupt, and indulged her walking in and out of the courtroom as the Court issued its ruling granting defendant's motion for judgment as a matter of law.

Thus, the instant contempt of the Court's orders is a minute reflection of the contempt Miss Nabkey apparently holds for the judiciary in general. Her contemptuous attitude has led to the filing of pleadings containing impertinent and scandalous matters which the Court is empowered to strike under Fed. R.Civ.P. 12(f). It has resulted in the filing of pleadings for improper purposes such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, sanctionable under Fed.R.Civ.P. 11. It has resulted in the unreasonable and vexatious multiplication of proceedings, sanctionable under 18 U.S.C. § 1927. *Wages v. I.R.S.,* 915 F.2d 1230, 1235–36 (9th Cir.1990), *cert. denied* 498 U.S. 1096, 111 S.Ct. 986, 112 L.Ed.2d 1071 (1991). And most recently, it has resulted in defiance of orders which this Court has the inherent contempt power to punish. *Chambers, supra,* —— U.S. at ——, 111 S.Ct. at 2132.

Miss Nabkey often pleads ignorance, asking the Court to be indulgent with her, a *pro se* litigant. If there is anything Miss Nabkey is not, it is ignorant and inexperienced. During the course of the last several years she has proven herself to be a shrewd and strident litigator.

Accordingly, in addition to the sanctions imposed above, with reference to Miss Nabkey's history of disdain for the Court, and for the sake of preserving the Court's limited resources, restraining abuse of the judicial process, protecting and preserving the sound and orderly administration of justice, and coercing conformity to the minimal standards of common courtesy, human respect and proper decorum which the Court and its constitutional function command, the Court imposes the following sanction as well.

No further pleading or filing of any sort shall be received from Miss Nabkey by the

---

**3.** See the Court's order denying plaintiff's motion to reconsider the denial of plaintiff's motion for

disqualification (docket # 422) dated June 29, 1992, p. 1, n. 1, for a summary of these motions.

Clerk of this Court for filing in this action or any other, unless and until it has passed scrutiny by a United States Magistrate Judge. In order to pass scrutiny, such pleading or filing shall be free of patently malicious, scandalous, vexatious and frivolous allegations and shall bear Miss Nabkey's certification that it is submitted in good faith. Any pleading or filing that does not conform to this minimal standard shall be rejected until it is made to so conform. Any violation or attempt to circumvent this injunction may be grounds for further contempt proceedings.

Yes, this injunction, too, restricts Miss Nabkey's right of access to the courts. It is a measure proven necessary, however, as incidental to the Court's legitimate attempt to maintain the integrity of the system of federal practice and procedure, see *Business Guides v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 552–54, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991), and is warranted by Miss Nabkey's persistent pattern of abusive conduct. See *Gibson v. R.G. Smith Co.*, 915 F.2d 260, 262 (6th Cir. 1990); *Visser v. Supreme Court of State of California*, 919 F.2d 113, 114 (9th Cir.1990); *Lysiak v. Comm'r of Internal Revenue*, 816 F.2d 311, 313 (7th Cir.1987). The injunction is narrowly drawn so as not to unnecessarily impede her right of meaningful access to the courts. See *id.*

Miss Nabkey may complain that this sanction is extraordinary and onerous. Onerous it is not. Miss Nabkey has been wont to complain that the Court does not treat her as it commonly does the lawyers who appear before the Court. This final sanction does no more than explicitly require Miss Nabkey to take a step toward conforming her conduct in litigation to the same standards of decency and respect that are obligatory upon and commonly observed by counsel.

## VIII.

Finally, the Court reminds Miss Nabkey that the present sanctions represent observance of "the least possible power doctrine." *Shillitani, supra.* If they fail in their purposes—to remedy past violations of the Court's orders, to secure future compliance

with the Court's orders, and to discourage abuse of the judicial process—due to Miss Nabkey's noncompliance with them, then such noncompliance may be grounds for further contempt proceedings, criminal in nature, with attendant possible punishments of fine and imprisonment.

An Order consistent with this opinion shall issue forthwith.

## ORDER OF CONTEMPT

In accordance with the Court's written opinion of even date, the Court finds plaintiff L. Lea Nabkey to be, and hereby HOLDS her in **CONTEMPT OF COURT,** for violating orders of the Court requiring her to timely return all unreturned copies of juror questionnaires provided to her in conjunction with the trial in this case, and prohibiting her from attempting to communicate with members of the jury or venire who had participated in the trial proceedings.

The Court hereby **IMPOSES** the following **SANCTIONS:**

1. Miss Nabkey shall return all unreturned copies of juror questionnaires to the Court Clerk not later than 5:00 p.m. on July 8, 1993; OR certify in writing that she is unable to locate the unreturned questionnaires and agree in writing not later than 5:00 p.m. on July 8, 1993, that she will return them immediately if she locates them at a later date.

2. Miss Nabkey shall prepare a letter of apology to Juror Tina Allen and submit it to the Court for approval not later than 5:00 p.m. on July 14, 1993. The letter shall be no longer than one page, be courteous in tone and free of acrimony. The letter shall include acknowledgement of the Court's order prohibiting contact with the jurors and shall include an apology for the letter of June 11, 1993, mailed in violation of the order. The letter shall include assurance that Miss Nabkey will engage in no further communications with Ms. Allen.

3. Miss Nabkey shall agree in writing not later than 5:00 p.m. on July 8, 1993, that she will refrain from further contact, direct or

indirect, with any of the jurors or veniremen who participated in the trial.

4. Miss Nabkey is enjoined from filing any papers and the Clerk of the Court is ordered to reject all papers submitted by Miss Nabkey for filing in this case file or any other, currently pending or closed or to be opened in the future, in the United States District Court for the Western District of Michigan, with the exception of those filings mandated by this order, until she has purged herself of contempt through compliance with this order's foregoing requirements and until this Court certifies that she has so complied.

5. After Miss Nabkey has purged herself of contempt through compliance with this order's foregoing requirements, she is enjoined from filing and the Clerk of the Court is ordered not to file any papers submitted by Miss Nabkey for filing in this case file or any other, currently pending or closed or to be opened in the future, in the United States District Court for the Western District of Michigan until after such paper has been approved for filing by a United States Magistrate Judge as satisfying the requirements that it (a) be free of patently malicious, scandalous, vexatious and frivolous allegations, and (b) bear Miss Nabkey's certification that it is submitted in good faith.

**IT IS SO ORDERED.**